IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Zita Leeson Weinshienk

Civil Action No. 10-cv-01799-ZLW-MJW

TW TELECOM HOLDINGS INC.,

    Plaintiff,

v.

CAROLINA INTERNET LTD,

    Defendant.

---

ORDER

---

This matter is before the Court on Defendant's Response To Order To Show Cause (Doc. No. 22). The Court has determined that the matter can be resolved on the parties' papers without a hearing.

The Clerk of Court entered Defendant's default in this case pursuant to Fed. R. Civ. P. 55(a) on October 13, 2010 (Doc. No. 12).[1] Defendant thereafter filed an Answer on November 1, 2010 (Doc. No. 19).[2] On November 10, 2010, the Court issued an

---

[1]The Court granted Plaintiff's motion for default judgment on October 27, 2010 (Doc. No. 17). However, the Order was later vacated after the Court was made aware that Defendant's attorney had filed an entry of appearance two days prior. (See Doc. Nos. 15, 18).

[2]The Court's October 27, 2010, Order (Doc. No. 18) vacating the Order granting default judgment ordered that "Defendant shall file a responsive pleading or motion on or before November 1, 2010, or be subject to default." After Defendant filed its Answer on November 1, 2010, the Court issued its Order To Show Cause, stating in part that,

> because Defendant had not shown good cause to set aside the entry of default as required by Fed. R. Civ. P. 55(c), and because the entry of default thus had not been, and still has not been, set aside, to the extent that the Court's Order requiring that Defendant file a 'responsive pleading or motion' would be understood as allowing Defendant to file an Answer, that portion of the Order was entered improvidently. An Answer cannot

Order To Show Cause (Doc. No. 21), ordering that Defendant's Answer would be stricken unless Defendant showed good cause in writing on or before November 24, 2010, why the Clerk's entry of default should be set aside pursuant to Fed. R. Civ. P. 55(c).  Defendant filed its response to the Order To Show Cause on November 24, 2010 (Doc. No. 22), and Plaintiff filed its reply on November 29, 2010 (Doc. No. 23).  The Court has considered carefully the parties' filings, the applicable legal authority, and the entire case file.

**I.     Service**

Under Fed. R. Civ. P. 4(e)(1) and 4(h)(1)(A), a corporation may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."[3]  The Complaint alleges that Defendant is a North Carolina corporation with its principal place of business in Charlotte, North Carolina.  Under North Carolina law,

> when [an entity's] registered agent cannot with due diligence be found at the registered office . . . the Secretary of State becomes an agent of the entity upon whom any such process, notice or demand may be served.  Service on the Secretary of State of any such process, notice or demand is made by delivering to and leaving with the Secretary of State or any clerk authorized by the Secretary of State to accept service of process, duplicate copies of the process, notice or demand and the applicable fee.  In the event any such

---

properly be filed in this case unless the entry of default has been set aside, and the entry of default cannot be set aside until Defendant shows good cause to do so pursuant to Fed. R. Civ. P. 55(c).

[3] Fed. R. Civ. P. 4(e)(1).  Fed. R. Civ. P. 4(h)(1)(A) makes that rule applicable to corporations, partnerships, and associations.

> process, notice or demand is served on the Secretary of
> State in the manner provided by this subsection, the
> Secretary of State shall immediately mail one of the copies
> thereof, by registered or certified mail, return receipt
> requested, to the entity at its principal office or, if there is no
> mailing address for the principal office on file, to the entity at
> its registered office. **Service on an entity under this
> subsection is effective for all purposes from and after
> the date of the service on the Secretary of State.**[4]

After repeated attempts to serve Defendant via Defendant's registered agent at Defendant's registered office in Charlotte, as well as at the registered agent's home in Charlotte, Plaintiff served the North Carolina Secretary of State's Office with the Summons and Complaint as statutory agent for Defendant, on August 13, 2010,[5] thus effecting service upon Defendant on August 13, 2010. Defendant has submitted evidence that the North Carolina's Secretary of State's Office mailed the Summons and Complaint via certified mail to Defendant on August 13, 2010, but that the documents were returned on September 7, 2010, as "unclaimed."[6] Defendant appears to argue that because the Summons and Complaint were returned to the North Carolina Secretary of State as "unclaimed," actual service was never effected upon Defendant. However, service is effective under N.C.G.S. § 55D-33 "from and after the date of service upon the Secretary of State," regardless of whether the mailing from the

---

[4] N.C.G.S. § 55D-33 (emphasis added).

[5] See Doc. No. 11-1.

[6] See Doc. No. 22-1 at 6.

Secretary of State to the defendant is accepted, rejected, or returned as unclaimed.[7]

Defendant was served on August 13, 2010. Defendant failed to file an Answer or otherwise defend within 21 days thereafter as required under Fed. R. Civ. P. 12(a)(1)(A)(i). Therefore, default properly was entered by the Clerk of Court on October 13, 2010.

## II.    Vacating Default

Fed. R. Civ. P. 55(c) provides that an entry of default may be set aside "for good cause shown." The parties agree that the Court may consider the following factors in determining whether there has been a showing of good cause under Rule 55(c): (1) whether the defendant's culpable conduct caused the default, (2) whether the defendant has a meritorious defense, and (3) whether the plaintiff will be prejudiced by setting aside the entry of default.[8] The decision to set aside an entry of default lies within the discretion of the trial court.[9]

### A.    Culpable Conduct

"A defendant's conduct has been determined to be 'culpable' if he has received actual or constructive notice of the filing of the action and failed to answer."[10] Plaintiff

---

[7]See Advanced Wall Systems, Inc. v. Highland Builders, LLC, 605 S.E.2d 728, 730-31 (N.C. App. 2004).

[8]Gilmore v. Carlson, 2003 WL 21872556, *3 (10th Cir. Aug. 8, 2003) (citing United States v. Timbers Preserve, 999 F.2d 452, 454 (10th Cir. 1993)).

[9]Ashby v. McKenna, 331 F.3d 1148, 1152 (10th Cir. 2003).

[10]Hunt v. Kling Motor Co., 841 F. Supp. 1098, 1106 (D. Kan. 1993) (citing Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985)).

asserts that on July 29, 2010, pursuant to Fed. R. Civ. P. 4(d), Plaintiff's counsel sent copies of the Summons, Complaint, and a Request for Waiver of Service in an overnight Fed-Ex package to Defendant in care of its registered agent, Morgan Miskell, at the address listed for Defendant on the North Carolina Secretary of State's website, but the package was returned as "Refused by recipient."[11]  While the Fed-Ex tracking record submitted to the Court indicates that Plaintiff's counsel sent a package to Charlotte, North Carolina on July 29, 2010, which was refused and subsequently returned, there is no shipping address indicated on the tracking record and no indication of what was contained in the package.  Further, Plaintiff has not submitted any affidavit from its attorney supporting these contentions.[12]

Plaintiff also asserts that on the same date that Fed-Ex attempted delivery and delivery was refused, Defendant visited Plaintiff's counsel's website twice.  However, the document submitted in support of this contention indicates only that "Service Provider" Carolina Internet, Ltd. visited the website.[13]  Without further evidence, the Court cannot conclusively find that it was Defendant, as opposed to another entity or person using Carolina Internet, Ltd. as a service provider, that viewed the website.[14]

---

[11] See Doc. No. 4-2.

[12] The Court notes, however, that Defendant has not disputed that the package was sent to, and returned by, Defendant.

[13] See Doc. No. 4-3.

[14] Again, however, the Court notes that Defendant has not disputed this contention.

Nonetheless, the remaining evidence firmly supports the finding that Defendant had actual or constructive knowledge of this action prior to the time that its Answer was due, and that it purposely evaded service. Specifically, Plaintiff has submitted the declaration of process server Jeff Cochrane, in which Cochrane states under penalty of perjury that on August 6, 2010, he attempted to serve Miskell at Defendant's business address. Cochrane told the person who answered the office door that he was there to serve Miskell with some court papers. The person told Cochrane that Miskell was not there, and directed him to call a telephone number on a sign taped to the door, which the sign stated was the number to call for deliveries to Defendant. Cochrane called that phone number and Miskell answered. Miskell stated that he was at another location and would not be back to the office until August 12. Cochrane returned to Defendant's office on August 12 but was told that Miskell was not there.[15]

Plaintiff has also submitted the Declaration of Heather Puckett, in which Ms. Puckett states under penalty of perjury that she works for Jay J. Teddy, a private investigator and process server in Shelby, North Carolina, who was retained by Plaintiff's counsel on August 12, 2010, to attempt to serve Miskell at his residence.[16] Puckett states that on August 12, 2010, at slightly after 5:00 p.m., she went to Miskell's

---

[15] Doc. No. 4-4.

[16] Plaintiff also contends that on August 11, 2010, its counsel mailed two separate packages containing the summons and complaint in this action via certified mail, one to Defendant's business address and one to Miskell's residence, and that the packages were returned to Plaintiff's counsel. However, the supporting evidence, Doc. Nos. 4-5 and 4-6, does not indicate the specific addresses to which the packages were sent, and does not conclusively indicate that the packages were returned. Defendant, again, does not specifically dispute the contentions.

residence, rang the front doorbell, and was told by the person who answered that Miskell was at soccer practice. When she returned to the residence at 8:45 p.m., a young man who identified himself as Miskell's 17-year-old nephew answered the door. Puckett told the young man that she was there to serve Miskell with some court papers. The young man told Puckett that he would make sure that Miskell received the court papers, and Puckett left the papers with him. Over the next two days, after obtaining Miskell's cell phone number from Teddy, Puckett sent Miskell a number of text messages informing him that she would like to give him some court papers. Miskell did not respond to the text messages.[17]

Plaintiff also submits the declaration of process server Jay J. Teddy, executed under penalty of perjury. Teddy states that on the morning of August 13, 2010, he went to Miskell's residence to attempt to serve him personally. A car was in the driveway, but no one answered the door. The next morning he went to the residence again. Again, a car was in the driveway but no one answered the door. After obtaining Miskell's cell phone number, Teddy sent Miskell a text message on August 16, 2010, stating that he was trying to work around Miskell's schedule in order to give him the court papers at his convenience. Miskell responded to the text message, inquiring what the court papers were about. Teddy replied, informing him of the content of the papers. Miskell did not reply. On August 20, 2010, Teddy sent Miskell another text message stating that

---

[17]Doc. No. 4-7. Plaintiff asserts that on the evening that Puckett left the summons and complaint with Miskell's nephew, there was another visit to Plaintiff's counsel's website by Defendant. The supporting evidence is again inconclusive. See Doc. No. 4-9.

7

Plaintiff's counsel was going to attempt to obtain a court order requesting service of process by the United States Marshals, but that Teddy was still willing to attempt to serve him at his residence if he wanted to avoid service by the Marshals. Miskell did not respond to the text message.[18]

On August 24, 2010, Plaintiff proceeded to file in this Court a motion for service by United States Marshals.[19] The motion was granted.[20] The Marshals attempted to serve Miskell at Defendant's business address on September 10, 2010, but there was no answer. They attempted to serve Miskell at his residence on September 20, 2010, but no one answered the door even though a car and two motorcycles were in the driveway.[21] The Marshals' Process Receipt And Return indicates that on September 23, 2010, the Marshals reached a person at Defendant's business number but were told that the business had moved and that there was no forwarding address.[22] The Marshals' return of service was returned unexecuted on October 1, 2010.[23]

---

[18]Doc. No. 4-10.

[19]Doc. No. 4.

[20]Doc. No. 7.

[21]Doc. No. 8.

[22]Id.

[23]Id.

Defendant has been presented with all of the contentions and evidence set forth above,[24] but has addressed none of them. Instead, Miskell states in his declaration that he did not receive a copy of the Complaint in this action until after he received a copy of the Entry Of Default on October 19, 2010.[25] That statement fails to address the pertinent question, whether Miskell had actual or constructive notice of this lawsuit at any point prior to the date that Defendant's Answer was due. Miskell also states that neither he nor anyone who works under his supervision intentionally avoided delivery of the summons and complaint from the North Carolina Secretary of State Corporations Division.[26] That statement does not address the evidence strongly indicating that Miskell intentionally avoided service of the summons and complaint on multiple occasions by three process servers and the United States Marshal. The evidence submitted to the Court in this case points in only one direction, which is that Miskell was aware that attempts were being made to serve him with papers concerning a lawsuit, and made every effort to avoid receipt of those papers. The evidence firmly supports a determination of culpable conduct by Defendant.

---

[24] See Doc. No. 20 at 3-7, 3 n.2. Defendant was served with Doc. No. 20 on November 8, 2010. All supporting evidence referenced in Doc. No. 20 which was attached to prior filings was available to Defendant via the Court/s CM/ECF system.

[25] Doc. No. 22-1 ¶ 4.

[26] Id. ¶ 8.

### B. Meritorious Defense

In order to satisfy the "meritorious defense" factor, the defendant must provide a "sufficient elaboration of facts to permit the trial court to judge whether the defense, if [defendant's] version were believed, would be meritorious."[27] "[M]ere legal conclusions, general denials, or simple assertions that the [defendant] has a meritorious defense" are insufficient.[28] Here, Defendant states that, "based on the evidence that will be presented" at some unspecified time in the future, Defendant will demonstrate that the acceleration clause under which Plaintiff is seeking damages constitutes an unenforceable penalty pursuant to North Carolina law.[29] This conclusory assertion, which contains no factual elaboration whatsoever, does not demonstrate a meritorious defense for purposes of Fed. R. Civ. P. 55(c).

Defendant asserts that it also has a meritorious defense based on an alleged breach of the duty of good faith and fair dealing by Plaintiff,

> in that the evidence will establish that the plaintiff has solicited Carolina Internet's clients to provide the same internet service that Carolina Internet was providing them during the time period when Carolina Internet and the plaintiff were under contract, and as a result, the plaintiff was successful in soliciting one of Carolina Internet's clients to terminate its internet service with Carolina Internet and to contract with plaintiff for the same service.[30]

---

[27] In re Stone, 588 F.2d 1316, 1319 (10th Cir. 1978)

[28] Id.

[29] See Doc. No. 22 at 5.

[30] Id.

Although Defendant does not specifically say so, it would appear that Defendant is arguing that Plaintiff's alleged breach of the implied covenant of good faith and fair dealing constituted a prior material breach of contract and thus excused Defendant's own breach.[31] However, Defendant has failed to cite any legal authority indicating that such facts, if true, would actually constitute a breach of the implied covenant of good faith and fair dealing under either Colorado or North Carolina law.[32]

Colorado law provides that the duty of good faith and fair dealing only applies "when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time."[33] Defendant has pointed to no such discretionary term in the parties' contract, and the Court has located none.[34] Further, North Carolina law provides that the implied duty of good faith and fair dealing does not arise "absent some connection to obligations which are contained in, or fairly implied by, the contract itself."[35] The Court has located no term, either express or implied, in the parties' contract which concerns or addresses Plaintiff's solicitation of or relationship with Defendant's clients.[36] Neither the contract itself nor the parties' business relationship is

---

[31] See Coleman v. Shirlen, 281 S.E.2d 431, 434 (N.C. App. 1981); Kaiser v. Market Square Discount Liquors, Inc., 992 P.2d 636, 640-41 (Colo. App. 1999).

[32] The contract at issue in this case contains a North Carolina choice of law provision. See Doc. No. 14-3 at 5 ¶ 18.

[33] Amoco Oil Co. v. Ervin, 908 P.2d 493, 498 (Colo. 1995).

[34] See Doc. Nos. 14-3, 14-4.

[35] Hardee's Food Systems, Inc. v. Beardmore, 1997 WL 33825259, *2 (E.D.N,C. June 6, 1997).

[36] See Doc. Nos. 14-3, 14-4.

sufficient to create an implied duty of good faith and fair dealing with respect to Plaintiff's actions vis-a-vis Defendant's clients.[37] Defendant has failed to allege facts which, if true, would support a meritorious defense involving a breach of the implied covenant of good faith and fair dealing.

Defendant also states that the evidence "may well show, depending on what is learned through discovery," that the alleged solicitations constituted a breach of the confidentiality provisions in the parties' agreement.[38] This statement provides no facts, and an assertion that facts might be obtained at some later time is insufficient.

### C.     Prejudice

The final factor the Court considers is whether Plaintiff will be prejudiced by setting aside the entry of default. Plaintiff states that it will be prejudiced if the entry of default is vacated because it will be required to engage in expensive motion practice regarding Defendant's meritless defenses.[39] The Court agrees that to the extent that vacating the entry of default would add expense by merely prolonging the inevitable, vacating the default would result in prejudice to Plaintiff.

Having analyzed each factor carefully, the Court concludes that Defendant has failed to show good cause to set aside the entry of default pursuant to Fed. R. Civ. P. 55(c). "[A] workable system of justice requires that litigants not be free to appear at

---

[37]See Hardee's, 1997 WL 33825259, at *2.

[38]See Doc. No. 22 at 5-6.

[39]Plaintiff's assertion of prejudice due to expenses incurred in connection with its efforts to vacate the default does not fall under the category of prejudice incurred *if* the default were vacated.

their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard."[40] The entry of default in this case shall not be set aside.

### III.   Answer

Once default has been entered, the defendant is deemed to have admitted the plaintiff's well-pleaded allegations of fact, and cannot defend the claim on the merits.[41] Because the default entered in this case will not be vacated, the Answer filed November 1, 2010, shall be stricken.

### IV.   Default Judgment

After entry of default, the court may enter a default judgment without a hearing "if the amount claimed is a liquidated sum or one capable of mathematical calculation."[42] In this case, Plaintiff's claim is for a contractual sum that is capable of mathematical calculation. However, Defendant has not informed the Court as to whether it contests the calculation of damages set forth in Plaintiff's motion for default judgment. The Court will allow Defendant to file a response to Plaintiff's motion for default judgment, addressing the issue of calculation of damages only. The Court thereafter will enter an Order on Plaintiff's motion for default judgment.

---

[40] Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d 1442, 1444-45 (10th Cir. 1983) (citation omitted).

[41] See Olcott v. Delaware Flood Co., 327 F.3d 1115, 1125, 1125 n.11 (10th Cir. 2003).

[42] Hunt v. Inter-Globe Energy, Inc., 770 F.2d 145, 148 (10th Cir. 1985).

Accordingly, it is

ORDERED that the Clerk's Entry Of Default (Doc. No. 12) shall not be set aside. It is

FURTHER ORDERED that the Defendant's Answer (Doc. No. 19) is stricken. It is

FURTHER ORDERED that Defendant shall file brief in a response to Plaintiff TW Telecom Holdings, Inc.'s Motion For Default Judgment Pursuant To FRCP 55(b)(2) (Doc. No. 14), addressing the issue of calculation of damages only, on or before December 27, 2011. If Defendant has no objection to Plaintiff's calculation of damages, it shall so inform the Court. Plaintiff may file a reply thereto on or before January 3, 2011.

DATED at Denver, Colorado, this 15th day of December, 2010.

BY THE COURT:

_____
ZITA LEESON WEINSHIENK, Senior Judge
United States District Court